UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HYPERION MUNITIONS, INC.,

        Plaintiff,

v.

CENTER FOR QUALITY TRAINING INTERNATIONAL LLC

        Defendant.
_____/

Case No: 25-11461

Honorable Nancy G. Edmunds
Magistrate Judge Kimberly Altman

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS [8]**

Before the Court is Defendant Center for Quantity Training International LLC's motion to dismiss Plaintiff Hyperion Munitions, Inc.'s ("Hyperion") complaint under Fed. R. Civ. P. 12(b)(6). (ECF No. 8.) Defendant argues that Hyperion's complaint fails to state a plausible claim for relief. Hyperion opposes the motion. (ECF No. 11.) The Court finds that the decision process would not be significantly aided by oral argument. Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendant's motion will be decided on the briefs and without oral argument.

Hyperion's complaint plausibly alleges breaches of the two contracts at issue in this case. The Court also finds that dismissal of Hyperion's unjust enrichment claim is premature at this stage. Defendant's motion to dismiss is therefore DENIED.

**I.    Background**

According to the pleadings, Hyperion is a Florida corporation that sells small arms, light weapons, and ammunition to wholesale and retail gun and ammunition stores. (ECF No. 1, PageID.1, 3.) Defendant is a Michigan company in the business of selling and

1

importing weapons, ammunition, and related products. (*Id.* at PageID.2.) In December 2021, Hyperion and Defendant entered into a contract for Defendant to sell and deliver 20 million units of small pistol primers, 409 kegs of rifle powder, and 409 kegs of pistol powder for slightly under $1.7 million (the "Hyperion Contract"). (*Id.* at PageID.3; ECF No. 8-1.) Defendant then entered into a similar contract with non-party All Day Outdoors, Inc. d/b/a SG Outdoors, Inc. ("SG Outdoors") to supply 20 million units of small pistol primers for $1.1 million (the "SG Outdoors Contract"). (ECF No. 1, PageID.4; ECF No. 8-2.)[1]

The Hyperion Contract and the SG Outdoors Contract both consist of a quotation document and a set of terms and conditions (collectively, the "Contracts"). Under sections 5 and 6 of the terms and conditions of both Contracts, Defendant (defined as "Seller") agreed to sell and deliver to Hyperion and SG Outdoors (both defined as "Buyer") the amount of goods described in the quotations. (ECF No. 8-1, PageID.46; ECF No. 8-2, PageID.60.) Section 9 of the terms and conditions of both Contracts require that Hyperion and SG Outdoors each pay deposits totaling 30% of the contract price. (ECF No. 8-1, PageID.47; ECF No. 8-2, PageID.61.) Section 9 goes on to provide the procedure for how deposits must be applied. (*Id.*) The relevant portion of section 9 of the Hyperion Contract is reproduced below:

> 9. *Payment of Contract Price and Other Amounts.* Unless otherwise specifically agreed in a subsequent writing signed by Seller, the Contract Price is due and payable to Seller, without setoff or other deductions or charges as follows: (a) 30% of the Contract Price (the "Deposit") upon

---

[1] Copies of both contracts are attached to Defendant's motion to dismiss. The Court may consider documents beyond the complaint itself if they are referenced in the complaint and "central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Because the contracts are expressly referenced in the complaint and central to the breach of contract claims—and because Hyperion does not appear to object to the Court considering them—the Court will consider the contracts in ruling on the motion to dismiss.

> acceptance of Seller's quotation (which the parties agree constitutes the "offer") by wire to Seller's account as designated in the wire instructions attached as Exhibit 1 (which thereafter shall be credited against the Contract Price as provided Below); (b) if the quantity delivered is a partial volume against the full contracted volume, the balance due on the Contract Price, if any, for the per unit delivered volume, after applying the Deposit, is payable within 48 hours of the product clearing customs at the USA Port of Entry; (c) if after any delivery a balance remains due on the total contracted volume, Buyer will refresh the deposit to be applied against the next shipment in the same manner as in sub-paragraph "b" herein; and (d) if after any delivery where there remains due on the contracted volume of product an amount wherein the contracted price is equal to, or less than, the amount of remaining on the contract the Buyer will not refresh the Deposit and Buyer will pay for the final delivery on the contracted amount within 48 hours of the product clearing customs at the USA Port of Entry Provided however, that Seller in its sole and absolute discretion is authorized to disburse such amounts from the Deposit as Seller determines is necessary to maintain the Delivery Schedule, in which event Buyer shall receive credit in an amount equal to the sum of all such disbursements.
>
> Deposit funds to remain on account in a segregated account to be applied against delivery when the product clears customs in the USA Port of Entry.

(ECF No. 8-1, PageID.47-48.) Section 9 of the SG Outdoors Contract's terms and conditions—which is similar, but not identical, to section 9 of the Hyperion Contract's terms and conditions—is also reproduced below in relevant part:

> 9. *Payment of Contract Price and Other Amounts*. Unless otherwise specifically agreed in a subsequent writing signed by Seller, the Contract Price is due and payable to Seller, without setoff or other deductions or charges as follows: (a) 30% of the Contract Price (the "Deposit") upon acceptance of Seller's quotation (which the parties agree constitutes the "offer") by wire to Seller's account as designated in the wire instructions attached as Exhibit 1 (which thereafter shall be credited against the Contract Price as provided Below); it being acknowledged that Seller has previously received an aggregate of $300,000 from Buyer, which amount shall be treated as part of and applied toward the Deposit hereunder. (b) if the quantity delivered is a partial volume against the full contracted volume, the balance due on the Contract Price, if any, for the per unit delivered volume, after applying the Deposit, is payable within 48 hours of the Buyer receiving the Bill of Lading (c) if after any delivery where there remains due on the contracted volume of product the Buyer will not refresh the Deposit and Buyer will pay for the final delivery on the contracted amount within 48 hours of the receiving the Bill of Lading Provided however, that Seller in its

3

> sole and absolute discretion is authorized to disburse such amounts from the Deposit as Seller determines is necessary to maintain the Delivery Schedule, in which event Buyer shall receive credit in an amount equal to the sum of all such disbursements.

(ECF No. 8-2, PageID.61.)

The parties agree that both versions of section 9 permit Defendant, at least in some instances, to advance deposit funds to Defendant's overseas supplier to "maintain the Delivery Schedule." (ECF No. 11, PageID.108-11; ECF No. 12, PageID.122-24.)[2] They disagree on the precise circumstances in which Defendant may advance the deposits—Defendant asserts that it may advance the deposit whenever it deems necessary to maintain the "Delivery Schedule," while Hyperion contends that Defendant may only advance the deposit to facilitate the "final delivery." (*Id.*)  The Court need not resolve this dispute at this juncture, and will assume, without deciding, that the Contracts permit Defendant to advance the deposit whenever it deems necessary to maintain the "Delivery Schedule."

Under section 10 of the terms and conditions of both Contracts, Defendant must hold the deposits in a "segregated account" and provide statements of the account at least quarterly:

> 10. *Management of Deposit.* Seller shall maintain the Deposit in a segregated account identified as for the benefit of both Seller and Buyer and shall provide Buyer with copies of the bank statement related to that account not less frequently than quarterly.

(ECF No. 8-1, PageID.48; ECF No. 8-2, PageID.62.)

---

[2] "Delivery Schedule" is a defined term that refers to the "installments" of goods to be delivered "as may be specified in the quotation." (ECF No. 8-1, PageID.46; ECF No. 8-2, PageID.60.)

4

A disclaimer at the bottom of both quotations purports to limit Defendant's "responsibility" under the Contracts to "(a) providing (upon written request of the undersigned) proof that the funds advanced hereunder have been sent to the importer of records [sic] for payment to the manufacturer" and "(b) delivering to the undersigned any an all products received in respect of and up to the amount of product specified herein." (ECF No. 8-1, PageID.44; ECF No. 8-2, PageID.58.)

Pursuant to the Contracts, Hyperion and SG Outdoors paid Defendant deposits totaling $506,278.34 and $497,500.00, respectively. (ECF No. 1, PageID.3-4.) Yet neither of the buyers ever received the contracted-for goods. (*Id.* at PageID.4-5.) Hyperion and SG Outdoors both demanded that Defendant return the deposits, but Defendant never did. (*Id.*) Defendant also failed to account for how the deposits were used or spent, failed to maintain the deposits in a segregated account, and failed to provide the quarterly account statements required under the Contracts. (*Id.* at PageID.4-7.) Instead, the complaint alleges that Defendant "abscond[ed]" with the deposits. (*Id.* at PageID.1.)

In March 2025, SG Outdoors assigned any claims it had against Defendant to Hyperion. (*Id.* at PageID.5.) Hyperion then sued Defendant for breach of the Hyperion Contract (Count I), breach of the SG Outdoors Contract (Count II), and unjust enrichment (Count III). (ECF No. 1.) Hyperion alleges that Defendant breached both Contracts by failing to deliver the contracted-for goods (or provide reasonable assurances that they would be delivered), failing to maintain the deposits in segregated accounts and provide account statements, and failing to return the deposits upon demand. The unjust enrichment claim alleges that Defendant has unjustly retained the benefit of the deposits without providing anything in return.

Defendant now moves to dismiss, arguing that the complaint fails to plausibly allege that Defendant breached the Contracts. (ECF No. 8.) Defendant also argues that Hyperion cannot maintain a claim for unjust enrichment because express contracts cover the same subject matter. (*Id.*) Hyperion opposes the motion (ECF No. 11), and Defendant has replied (ECF No 12).

II.     **Standard of Review**

The Court may dismiss a case under Federal Rule of Civil Procedure 12(b)(6) if the complaint fails to state a claim upon which relief can be granted. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430. The Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Id.* (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). But the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Directv*, 487 F.3d at 476 (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)).

Dismissal is appropriate if the plaintiff fails to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Id.* at 678 (citation omitted). On the other hand, "a sheer possibility that a defendant has acted unlawfully" is insufficient. *Id.* (citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks removed).

### III.  Analysis

#### A.  Breach of Contract

Both Contracts are governed by Michigan law. (ECF No. 8-1, PageID.51; ECF No. 8-2, PageID.65.) "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (Mich. 2014).

Defendant's motion does not dispute the existence of the Contracts or that Hyperion suffered damages. Instead, Defendant asserts that Hyperion fails to plausibly allege a breach of both Contracts. The Court will therefore limit its analysis to whether the complaint plausibly alleges that Defendant breached the contract.

The complaint alleges three different breaches of both Contracts:

> a. Failure to deliver the promised goods or provide reasonable assurances that the goods will be delivered;
>
> b. Failure to maintain [the deposits] in a segregated account and provide account statements no less than quarterly; and
>
> c. Failure to return and reimburse [the deposits] upon demand.

(ECF No. 1, PageID.6-8.)

### i. Failure to Deliver Goods and Properly Manage Deposits

Based on the allegations in the complaint and terms of the Contracts, Hyperion clearly states a claim regarding breaches (a) and (b). The complaint alleges on its face that Hyperion and SG Outdoors contracted with Defendant for the purchase of goods and that Hyperion and SG Outdoors never received them. (ECF No. 1, PageID.3-5.) Taken as true, these allegations plausibly allege that Defendant failed to comply with sections 5 and 6 of the Contracts, in which Defendant agreed to sell and deliver the goods to Hyperion and SG Outdoors. (ECF No. 8-1, PageID.46; ECF No. 8-2, PageID.60.) The complaint further alleges that Defendant failed to maintain the deposits in a separate account and failed to account for how the deposits were used or spent. (ECF No. 1, PageID.4-8.) This plausibly alleges a breach of section 10 of the Contracts, which requires Defendant to "maintain the Deposit in a separate account" and provide "copies of the bank statement related to that account not less than quarterly." (ECF No. 8-1, PageID.48; ECF No. 8-2, PageID.62.)

In response to both alleged breaches, Defendant points to a disclaimer that appears on both invoices:

> The undersigned acknowledges and agrees that Center for Quality Training, LLC, a Michigan limited liability company ("Center"), is performing services for the undersigned to facilitate the acquisition of the above products and that Center's responsibility shall be limited to: (a) providing (upon written request of the undersigned) proof that the funds advanced hereunder have been sent to the importer of records [sic] for payment to the manufacturer; and (b) delivering to the undersigned any and all products received in respect of and up to the amount of product specified herein.

(ECF No. 8-1, PageID.44; ECF No. 8-2, PageID.58.) Defendant argues that the complaint does not plausibly allege that Defendant breached the contract by failing to deliver the

goods because this disclaimer limits Defendant's responsibility to "delivering… any and all products *received*" and "Hyperion's complaint does not allege facts suggesting that [Defendant] ever received from the supplier any of the goods at issue." (ECF No. 8, PageID.35) (emphasis added by Defendant). Defendant relatedly contends that the parties anticipated that deposit funds would be "advanced" for payment to a third-party manufacturer, and the complaint "does not allege any facts suggesting that [Defendant] did anything other than forward them to the importer for payment to the manufacturer." ECF No. 8, PageID.37; *see also* ECF No. 12, PageID.122.)[3] Defendant thus argues that it did not violate its contractual obligation to maintain the deposits in a separate account and provide account statements because, instead of holding the deposit funds in an account, it put them toward a contractually permitted use.

The problem with both arguments is that they require the Court to make factual inferences in Defendant's favor at a stage where the Court is required to do the opposite. Defendant's motion requires the Court to infer that (1) Defendant forwarded the deposit funds for payment to its supplier, but (2) Defendant never received the goods. Assuming, without deciding, that Defendant would be relieved of contractual liability in this scenario, the Court is not required to take this version of events as true or penalize Hyperion for failing to exclude the possibility of it in its complaint. The Rules of Civil Procedure do not "require a plaintiff to plead facts tending to rebut all possible lawful explanations for a defendant's conduct." *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 222 (6th Cir.

---

[3] Defendant also relies on section 9 of the terms and conditions to support its view that it was allowed to forward the deposits to its supplier. (ECF No. 8, PageID.37.) As discussed, the Court will assume that Defendant's interpretation is correct for the purpose of this motion.

9

2024) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009)). While Defendant's exculpatory scenario—that Defendant forwarded the deposits to its supplier and never received the goods—is plausible, it is also plausible that Defendant received the goods and never delivered them, mishandled the deposits, or both. Any of these can be inferred from Hyperion's allegations that Defendant accepted the deposits, never delivered the goods, and failed to account for what it did with the deposits. At this stage, the Court need not choose between the various competing scenarios that can be inferred from these allegations. *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.,* 648 F.3d 452, 458 (6th Cir. 2011) ("Often, defendants' conduct has several plausible explanations. Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage."). Rather, the Court must "draw all reasonable inferences in favor of the plaintiff." *Bassett*, 528 F.3d at 430 (quoting *Directv*, 487 F.3d at 476). Taking all inferences in Hyperion's favor, Hyperion's allegations that Defendant mismanaged the deposits and failed to deliver the goods plausibly allege a breach of contract.

### ii. Failure to Return Deposits

Hyperion also alleges that Defendant breached the Contracts by "fail[ing] to return and reimburse the deposits upon demand." (ECF No. 1, PageID.6, 8.) Defendant argues that this allegation fails to state a claim for breach of contract because the Contracts "contain no provision requiring [Defendant] to return the deposits." (ECF No. 8, PageID.36.) Hyperion acknowledges that the Contracts "do not expressly state" that it and GS Outdoors would have their deposits returned under the circumstances as alleged. (ECF No. 11, PageID.110.) But Hyperion asserts that the structure of the Contracts and

10

the designation of the payments as a "deposit"—rather than a "fee"—implies that the parties intended for the deposits to be returned if Defendant did not apply them toward paying for the goods covered by the Contracts. (*Id.*)

To resolve this disagreement, the Court must interpret the contract in accordance with Michigan law. The Court's "primary obligation" is to "give effect to the parties' intention at the time they entered into the contract." *County of Ingham v. Mich. Cnty. Rd. Comm'n Self-Ins. Pool*, 975 N.W.2d 826, 834 (Mich. 2021) (quoting *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 870 (Mich. 2016)). The Court must examine the language of a contract according to its plain and ordinary meaning. *Id.* "[I]f contractual language is clear, construction of the contract is a question of law for the court." *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 415 (Mich. Ct. App. 1997). But "[i]f the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary [dismissal] is therefore inappropriate." *Id.*

Here, the Contracts are silent as to whether Defendant is obligated to return the deposits. Section 10 of the terms and conditions plainly require Defendant to maintain the deposits in a separate account. And section 9 permits Defendant to apply the deposits toward the purchase of the goods from its supplier. Yet neither section addresses what must occur if Defendant does neither of those things.

Defendant apparently reads this silence to say that it is not required to return the deposits under any circumstances. But the Michigan Court of Appeals held otherwise in the most analogous case the Court has been able to find. *See Livonia Gateway Invs., LLC v. Brook Prop. Holding, LLC*, No. 340439, 2019 WL 982517, at *7 (Mich. Ct. App. Feb. 28, 2019). There, the plaintiff paid the defendant a $10,000 earnest-money deposit

11

pursuant to a real-estate purchase agreement. *Id.* at *1. The agreement provided that the deposit would be refunded the if the defendant failed to accept the plaintiff's purchase offer by a certain date. *Id.* The defendant accepted the offer, but the transaction fell through for other reasons. *Id.* The contract was silent as to what should happen to the deposit under those circumstances. While the defendant argued that this silence meant that it could retain the deposit, the Court of Appeals held that the silence rendered the contract ambiguous. *Id.* at *7. The court acknowledged the rule of construction that "silence does not equal ambiguity if the law provides a rule to be applied in the absence of a provision to the contrary." *Id.* (quoting *Norman v. Norman*, 506 N.W.2d 254, 255 (Mich. Ct. App. 1993)). But the only "rule of law" the court could find regarding the issue was that the disbursement of an earnest-money deposit was "dictated by the parties' intent, as reflected in the terms of the parties' purchase agreement." *Id.* (collecting cases). Since the agreement contained no evidence of the parties' intent regarding how the deposit should be disbursed—the agreement was silent—the Court of Appeals found that the agreement was ambiguous. *Id.*

The reasoning in *Livonia Gateway* applies with equal force here. The Contracts do not expressly state whether, or in what circumstances, Hyperion and SG Outdoors were entitled to have their deposits returned. The parties have cited no rule of law governing how the deposits should be disbursed if the parties' contract is silent. Thus, without further factual development to determine the intent of the parties regarding the deposits, the Court cannot find as a matter of law that Hyperion and SG Outdoors would never be entitled to have their deposits returned. *See Meagher*, 565 N.W.2d at 415. The Court therefore declines to dismiss this aspect of Hyperion's breach of contract claim.

Hyperion plausibly alleges that Defendant breached the Contracts. The motion to dismiss is accordingly DENIED as to Counts I and II of the complaint.

### B.     Unjust Enrichment

Hyperion's third claim alleges that Defendant was unjustly enriched when it retained the benefit of the deposit without providing anything in return. (ECF No. 1, PageID.8-9.)  Defendant argues that this count fails because "neither party disputes the existence of the contracts at issue in this case" and a claim for unjust enrichment is unavailable where there is an express contract between the parties. (ECF No. 12, PageID.125.) Hyperion responds that it is still entitled to plead its unjust enrichment claim in the alternative at this stage of the proceedings. (ECF No. 11, PageID.113-15.)

"Under Michigan law, to plead a claim of unjust enrichment, a plaintiff must establish that the defendant has received and retained a benefit from the plaintiff and inequity has resulted. Michigan courts will then imply a contract to prevent unjust enrichment. However, courts will not *imply* a contract where there is an *express* contract governing the same subject matter." *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 824, 833 (E.D. Mich. 2014) (citing *Fodale v. Waste Mgmt. of Michigan, Inc.,* 718 N.W.2d 827, 841 (2006)). A plaintiff may plead an unjust enrichment claim in the alternative to a breach of contract claim, but only when "there is doubt as to the existence of a contract." *Id.* at 834 (citing *Ford Motor Co. v. Ghreiwati Auto,* 945 F.Supp.2d 851, 871 (E.D. Mich. 2013)). "If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract." *Id.* (quoting *Advanced Plastics Corp. v. White Consol. Indus., Inc.,* 828 F. Supp. 484, 491 (E.D.Mich.1993)). But the Court should not dismiss an unjust enrichment claim at the

13

pleading stage if the defendant has "kept its options open" and may later deny the existence or enforceability of a contract. *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 796 (6th Cir. 2016) (quoting *Terry Barr Sales Agency, Inc. v. All–Lock Co., Inc.,* 96 F.3d 174, 182 (6th Cir.1996)).

Here, the parties agree that express contracts exist. Hyperion's breach-of-contract claim alleges and depends on the Contracts. Defendant also represents in its reply that it does not dispute the existence of the Contracts. (ECF No. 12, PageID.125.) But, without the benefit of an answer and affirmative defenses, the Court cannot be certain that Defendant will not contest the validity or enforceability of the Contracts. *See Biagini v. Mocnik*, 120 N.W.2d 827, 828 (Mich. 1963) (observing that an express contract only precludes an unjust enrichment claim where there is a "valid, enforceable contract"); *Blumberg v. Ambrose*, No. 13-CV-15042, 2015 WL 1737684, at *3 (E.D. Mich. Apr. 16, 2015) ("[Q]uantum meruit is an allowable theory where a contract is merely unenforceable; it is not confined to cases where the existence of the contract is in doubt.") (collecting cases). Accordingly, the Court will not dismiss the unjust enrichment claim at this time.

## IV. Conclusion

For the foregoing reasons, the Court DENIES the motion to dismiss.

SO ORDERED.

s/ Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: November 18, 2025

14

      I hereby certify that a copy of the foregoing document was served upon counsel of record on November 18, 2025, by electronic and/or ordinary mail.

                                        s/ Marlena Williams
                                        Case Manager